UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA ALPHONSE, an individual,<br><br>                                  Plaintiff,<br><br>v.<br><br>DAVID B. WALLER, an individual; PATENT SUCCESS STRATEGIES, LLC, a California Limited Liability Company; and DOES 1 through 10, inclusive,<br><br>                                  Defendants. | Case No.: 22-CV-347 JLS (DEB)<br><br>**ORDER (1) REMANDING ACTION TO THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN DIEGO, FOR LACK OF SUBJECT-MATTER JURISDICTION; AND (2) DENYING AS MOOT MOTION TO DISMISS**<br><br>(ECF Nos. 4, 8, 9, 11) |

      Presently before the Court is Defendants David B. Waller and Patent Success Strategies, LLC's (collectively, "Defendants") Motion to Dismiss Plaintiff's Complaint ("MTD," ECF No. 4). On April 15, 2022, the Court ordered Defendants to show cause why this action should not be remanded to state court for lack of federal-question jurisdiction. *See generally* ECF No. 8 ("OSC"). Defendants responded to the OSC on April 29, 2022. *See* ECF No. 9 ("Defs.' Resp."). Plaintiff Sandra Alphonse also filed a response, upon the Court's request. *See* ECF No. 11 ("Pl.'s Resp."). Having considered the Parties' briefing and the law, the Court concludes it lacks subject-matter jurisdiction over this matter and **REMANDS** this action to the Superior Court of the State of California, County of San Diego. Accordingly, the Court **DENIES AS MOOT** Defendants' MTD.

# BACKGROUND

On or around June 2012, Defendants entered into a verbal agreement with Plaintiff to serve as her patent agent to prosecute a patent for a nasal CPAP mask. *See* ECF No. 1-2 ("Compl.") ¶ 12. Defendants were to, *inter alia*, perform a patentability search and prepare a patent application. *See id.* In June 2012, Defendants performed a prior art search and billed Plaintiff $500 for that work. *Id.* ¶ 14. Defendants then prepared an international patent application, titled "Nasal Respiratory Assembly and Methods of Use," naming Plaintiff as the sole inventor. *Id.* ¶ 15. On December 28, 2012, Defendants filed International Application No. PCT/US2012/072153 (the "International Application"). *Id.*

On March 29, 2013, an International Search Report and Written Opinion ("ISR/WO") generated by the U.S. International Search Authority ("ISA") was mailed to Defendants, which identified four prior art references that "render[ed] all claims of [the International Application] to lack inventiveness." *Id.* ¶ 16. On April 2, 2013, Defendants provided Plaintiff with a copy of the ISR/WO, expressing their disagreement with the ISA's conclusions. *Id.* ¶ 17. On July 3, 2014, the International Application was published as International Publication Number WO 2014/105060 A1. *Id.* ¶ 18. Thereafter, Defendants coordinated the filing by foreign law firms of Australian (the "Australian Application") and European (the "European Application") patent applications based on the International Application. *Id.* ¶ 19.

On June 15, 2015, Defendants filed a U.S. patent application, U.S. Patent Application No. 14/739,898 (the "U.S. Application"), that included the same disclosure as the International Application. *Id.* ¶ 20. Plaintiff asserts that Defendants committed numerous errors and missteps in the handling of the U.S. Application. *See id.* ¶¶ 21–33. Most importantly, Plaintiff claims that Defendants failed to file any Information Disclosure Statement identifying prior art known by Defendants to be potentially material to the patentability of the claims in the U.S. Application. *See id.* ¶ 48. In October 2016, a European Search Opinion ("ESO") identified at least eight prior art references that affected the patentability of the pending claims in the European Application. *Id.* ¶ 34. And in

August 2017, an Examination Report identifying the same prior art references as the ISR/WO and ESO was issued in the Australian Application. *Id.* ¶ 35.

On July 16, 2018, the U.S. Patent and Trademark Office ("USPTO") mailed an Office Action concerning the U.S. Application, rejecting all pending claims. *Id.* ¶ 36. Ultimately, the USPTO mailed a Notice of Allowance as to the U.S. Application, *see id.* ¶ 38, but subsequently filed a Notice of Abandonment because of the failure to timely file the inventor's oath or declaration, *id.* ¶ 42. Defendants falsely told Plaintiff the Notice of Abandonment was attributable to an error by the USPTO, rather than Defendants, and charged Plaintiff the $1,000 fee required to revive the U.S. Application. *Id.* ¶ 43.

On October 1, 2019, the USPTO issued U.S. Patent No. 10,426,909 (the "'909 Patent") based on the U.S. Application; however, the '909 Patent failed to include a claim of priority to the International Application. *Id.* ¶ 45.[1] After the '909 Patent issued, Plaintiff tried to market it to interested companies but was informed that there may be problems with her patent. *Id.* ¶ 50. In mid-2020, Plaintiff retained Withrow & Terranova, PLLC ("W&T"), to file a request to reissue to broaden the scope of the '909 Patent's claims. *Id.* ¶ 51. It was at this time Plaintiff learned of Defendants' failure to identify prior art or validly claim priority to the International Application. *Id.* ¶¶ 51–52. Plaintiff engaged W&T to attempt to remedy these defects in the '909 Patent. *Id.* ¶ 53. Plaintiff also asked Defendants to assist her in remedying the defects by submitting a declaration in support of her anticipated reissuance request; however, Defendants refused to help Plaintiff. *Id.* ¶¶ 56–57.

On September 21, 2021, W&T filed U.S. Reissue Patent Application No. 17/491,513 (the "Reissue Application"), which indicates Plaintiff's belief that the '909 Patent is wholly or partly inoperative or invalid due to errors attributable to Defendants. *Id.* ¶¶ 59–60. Plaintiff claims that, due to the pendency of the Reissue Application and the uncertainty as

---

[1] The USPTO has since granted a petition to accept the unintentionally delayed claim of priority to the International Application. *Id.* ¶ 62.

to whether a valid patent ever will be issued, the '909 Patent "effectively has zero value and cannot be licensed or sold." *Id.* ¶ 61.  A February 4, 2022 letter from the USPTO indicates that the Reissue Application likely will receive an office action in approximately 18 months, i.e., in approximately August 2023.  *Id.* ¶ 63.[2]

Plaintiff initiated this action on February 8, 2022, in the Superior Court of the State of California, County of San Diego.  *See generally* Compl.  Plaintiff alleges seven claims arising under state law: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) professional negligence (duty of care); (4) professional negligence (duty of loyalty); (5) constructive fraud; (6) breach of fiduciary duty; and (7) unfair business practices under California Business and Professions Code section 17200.  *See id.*  Thereafter, Defendants removed, claiming federal-question jurisdiction pursuant to 28 U.S.C. §§ 1338(a) and (b).  *See generally* ECF No. 1 ("Notice of Removal").  The case was initially assigned to the Honorable Michael M. Anello but was subsequently reassigned to this Court.  *See* ECF No. 3.

Defendants filed their MTD on March 22, 2022.  *See* MTD.  Before briefing on the MTD was complete, however, the Court issued an Order to Show Cause, ordering Defendants to distinguish this matter from *Gunn v. Minton*, 568 U.S. 251 (2013), in which the Supreme Court held that state law malpractice claims will "rarely, if ever, arise under federal patent law."  *See generally* ECF No. 8 ("OSC") (citing *Gunn*, 568 U.S. at 258).  Defendants timely responded to the OSC.  *See* Defs.' Resp.  The Court thereafter requested a response from Plaintiff, *see* ECF No. 10, which Plaintiff provided, *see* Pl.'s Resp.

## LEGAL STANDARD

"Federal district courts are courts of limited jurisdiction that 'may not grant relief absent a constitutional or valid statutory grant of jurisdiction' and are 'presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears.'"  *Cooper v.*

---

[2] Plaintiff claims she had to file this action prior to a final determination of the Reissue Application "because Defendants refused to agree to tolling the statute of limitations."  Pl.'s Resp. at 4.

*Tokyo Elec. Power Co.*, 990 F. Supp. 2d 1035, 1038 (S.D. Cal. 2013) (quoting *A-Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003)). Federal district courts "have original jurisdiction of any civil action arising under any Act of Congress relating to patents," 28 U.S.C. § 1338(a), as well as "any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the . . . patent . . . laws," *id.* § 1338(b).

"In *Christianson v. Colt Industries Operating Corp.*, the Supreme Court held a claim may 'aris[e] under' the patent laws even where patent law did not create the cause of action, provided the 'well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law.'" *NeuroRepair, Inc. v. The Nath L. Grp.*, 781 F.3d 1340, 1343 (Fed. Cir. 2015) (quoting 486 U.S. 800, 808–09 (1988)). Specifically, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

## ANALYSIS

Defendants argue that "this is that rare case" where state malpractice claims arise under federal patent law. Defs.' Resp. at 1. Defendants claim that, "[b]ecause Ms. Alphonse asserts that her own valid patent is in fact invalid, her claims cannot be adjudicated without making a determination as to the validity of that patent," rendering the "case within a case" not purely backward-looking or hypothetical. *Id.* Defendants further rely on the fact that Mr. Waller's license to practice law, as a non-lawyer patent agent, exists through the USPTO; accordingly, the federal-state balance is not disrupted by this Court's adjudication of the Parties' dispute. *Id.* at 2. Plaintiff counters that the instant case does not require resolution of any material issues of patent law, as "the question is whether the existing patent is commercially viable, or if it has no value due to the actions of Defendants." Pl.'s Resp. at 2–3 (footnote omitted). Accordingly, because "[t]his case does not determine the validity and scope of Plaintiff's patent as to third parties moving forward," "there is no substantial issue of federal law before the Court." *Id.* at 3.

Here, the Court finds that any patent issues, including the '909 Patent's (in)validity, are not "necessarily raised" in this litigation. "'[A] patent law issue will be necessarily raised only if it is a necessary element of one of the well-pleaded claims.'" *Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC*, 938 F.3d 1355, 1362 (quoting *NeuroRepair*, 781 F.3d at 1344). Although Plaintiff alleges that the '909 Patent "is facially invalid," Compl. ¶ 64, Plaintiff seeks no declaration of patent invalidity. And while Defendants argue that "[Plaintiff] asserts patent invalidity as a claimed harm in six of her seven claims," Defs.' Resp. at 4 (citing Compl. ¶¶ 74, 79, 86, 94, 104, 114), a court need not declare the '909 Patent invalid for Plaintiff to prevail on any of her claims. In other words, while damage is a necessary element of Plaintiff's claims, that damage need not take the form of a patent found to be invalid in a court of law. Plaintiff also claims she has been harmed because, *inter alia*, "her patent has [diminished or] no commercial value," she has lost out on the opportunity to market her patent and the invention claimed therein, "[she] has been required to incur attorney's fees to perform the work" Defendants were hired to complete, she has paid Defendants money to which they were not entitled, and she has had to pay other fees and costs she should not have incurred. *See, e.g.*, Compl. ¶¶ 73–74, 78–79, 85–86, 93–94, 104, 113–17, 126. In other words, even if the '909 Patent is technically valid, Plaintiff claims that no companies would license or purchase her patent because of perceived "deficiencies or issues." *Id.* ¶ 50; *see also id.* ¶ 61 (explaining that the '909 Patent "effectively has zero value and cannot be licensed or sold"). The Court need not determine whether or not the '909 Patent is invalid, only whether it has value in light of the various errors Plaintiff alleges Defendants committed in the prosecution thereof. *See, e.g.*, *Inspired Dev. Grp.*, 938 F.3d at 1363 (finding infringement not a "necessary element" of unjust enrichment claim where infringement was one, but not the only, way to establish a benefit accepted and retained).

Even were validity "necessarily raised," however, the Court further finds that the third *Gunn* requirement of a "substantial" federal issue is not satisfied here. "[T]he touchstone for 'substantiality' is whether allowing state courts to resolve the case would

undermine 'the development of a uniform body of [patent] law.'" *Id.* at 1364 (quoting *Vermont v. MPHJ Tech. Invs., LLC*, 803 F.3d 635, 646 (Fed. Cir. 2015)). Accordingly, "we consider 'the importance of the issue to the federal system as a whole.'" *Id.* (quoting *Gunn*, 568 U.S. at 260). "A 'substantial federal issue is more likely to be present' if: a) 'a pure issue of [federal] law is dispositive of the case,' b) 'the court's resolution of the issue will control numerous other cases,' [or] c) '[t]he Government . . . has a direct interest in the availability of a federal forum to vindicate its own administrative action.'" *Id.* (quoting *NeuroRepair*, 781 F.3d at 1345). Here, no pure issue of federal law is case dispositive because "the present matter involves a question of federal law, at most, as only one of several elements needed to prevail." *NeuroRepair*, 781 F.3d at 1346 (citations omitted). Second, allowing the state court to resolve the issue will not control numerous other cases, because a state court cannot invalidate patents; thus, any preclusive effect "would be limited to the parties and patents that had been before the state court." *Inspired Dev. Grp.*, 938 F.3d at 1365–66 (footnote and citations omitted). "Such 'fact-bound and situation-specific' effects are not sufficient to establish federal arising under jurisdiction." *Id.* at 1366 (citation omitted). Finally, despite Mr. Waller's status as a patent agent, the government would appear to have no direct interest in this dispute between private parties. *Id.* at 1368–69.

As to the fourth *Gunn* element, Mr. Waller is not an attorney licensed to practice in the State of California, and thus the State of California's interest in regulating its lawyers is not implicated. *See NeuroRepair*, 781 F.3d at 1348 (citation omitted). Nonetheless, the fact remains that permitting cases such as the one at issue here to be heard in federal court would disrupt, more generally, the federal-state balance, as "[t]o hold that all questions of patent infringement [or validity] are substantial questions of federal law for the purposes of federal patent jurisdiction would sweep a number of state-law claims into federal court." *Inspired Dev. Grp.*, 938 F.3d at 1369 (quoting *MDS (Canada) Inc. v. Rad Source Tech., Inc.*, 720 F.3d 833, 843 (11th Cir. 2013)).

/ / /

That the instant action involves patent prosecution rather than litigation, or that the instant action involves a "live" patent and thus "could have a real-world result and would not be backward-looking," arguments rejected by the Federal Circuit in *NeuroRepair*, does not change this Court's determination that subject-matter jurisdiction does not lie. 781 F.3d at 1348. For the reasons already provided, the instant dispute is unlikely to control other cases, and federal courts would not be bound by the state court's determination on any issues of validity.

Finally, the Court finds jurisdiction under 28 U.S.C. § 1338 lacking due to "the removal statute's strict presumption against removal." *Genelink Biosciences, Inc. v. Colby*, 722 F. Supp. 2d 592, 601 (D.N.J. 2010) (remanding legal malpractice claim premised on patent prosecution for lack of subject-matter jurisdiction). "The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). Accordingly, resolving any doubts in favor of remand, the Court finds that the instant action does not "arise under" the patent laws such that this Court can exercise federal subject-matter jurisdiction over it.

## CONCLUSION

In light of the foregoing, the Court **REMANDS** this action to the Superior Court for the State of California, County of San Diego, for lack of subject-matter jurisdiction and **DENIES AS MOOT** Defendants' pending Motion to Dismiss (ECF No. 4). As this concludes the litigation in this matter, the Clerk of the Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: June 27, 2022

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge